IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA T. BOSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 16-0596-CG-C |
| ) | |
| HYDRATECH INDUSTRIES ) | |
| FLUID POWER, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment (Doc. 25), Plaintiff's response in opposition (Doc. 35), Defendant's reply (Doc. 37), and Defendant's motion to strike Plaintiff's evidentiary submission (Doc. 38). For the reasons explained below, the Court finds that Defendant's motions to strike and for summary judgment should be granted.

## FACTS

Plaintiff Angela T. Bosby filed this case *pro se* asserting that she was racially discriminated and retaliated against by her employer, Defendant Hydratech Industries Fluid Power, Inc. ("Hydratech"), in violation of Title VII of the 1964 Civil Rights Act, as amended. (Doc. 1). The complaint alleges that she was discriminated against when employees in Hydratech's accounting department treated her negatively by making her job more difficult because she is African-American. (Doc.

1

1, ¶¶ 19, 20). The Complaint also alleges that Plaintiff was terminated on May 5, 2015 in retaliation for having "reported her treatment by other employees to Selph, Human Resources Director, Vosen, General Manager, and Israel, Finance Manager who were all aware that Plaintiff was complaining that the treatment was based on her race, African-American." (Doc. 1, ¶¶ 23-24). Plaintiff's complaint also alleges that Hydratech's stated reasons for firing her were pretextual, as she had received no counseling or discipline for any of the stated reasons prior to her termination. (Doc. 1, ¶¶ 8, 23). According to the complaint, other Caucasian employees committed the same actions she was accused of committing but were not terminated. (Doc. 1, ¶ 10).

Plaintiff was hired as an Accounting Specialist at Hydratech in November 2012. (Doc. 27-1, ¶ 9). Plaintiff and other Hydratech employees received and signed a copy of Hydratech's Policy and Procedures Manual, which contains an Equal Employment Opportunity Policy that strictly prohibits racial discrimination and retaliation and also contains a Non-Harassment Policy that prohibits racial discrimination and harassment. (Doc. 27-1, ¶¶ 5, 9; Doc. 30-1, pp. 6-7). Hydratech hired Mitchell Israel in January 2015 to serve as its Finance Manager and a month later Israel hired Robyne Clower as the Accounting Department Team Leader. (Doc. 27-1, ¶ 13; Doc. 30-1, pp. 10-11). Upon her hire, Ms. Clower became Plaintiff's direct supervisor. (Doc. 28-1, ¶ 13).

Both Clower and Plaintiff complained to Israel and the Human Resources

Manager, Ms. Selph about each other concerning routine interoffice personality conflicts. (Doc. 28-1, ¶ 14, Doc. 29-1, ¶¶ 14-15). Clower complained that Plaintiff was resistant to change, and Plaintiff complained that she did not think changes in the accounting department were necessary. (Doc. 28-1, ¶¶ 14, 15). Clower also reported that Plaintiff did not meet performance standards, failed to properly communicate with her and did not display a positive cooperative attitude. (Doc. 29-1, ¶ 14). None of the complaints were based on race and Plaintiff never complained to Israel or Selph that she felt discriminated against or harassed on the basis of her race. (Doc. 28-1, ¶¶ 14, 15; Doc. 29-1, ¶ 15).

From January 2015 to May 2015, Plaintiff clocked in late 28 times and clocked out early 22 times. (Doc. 29-1, ¶ 18). Ms. Selph had multiple verbal counseling conversations with Plaintiff during that time period to improve her attendance. (Doc. 29-1, ¶ 18). In March 2015, Plaintiff falsely recorded on her time card that she arrived at 8:00 a.m. on March 17 when she had been observed arriving after 8:00 a.m. and she was counseled on that issue as well. (Doc. 29-1, ¶ 18). Hydratech also had issues with Plaintiff working off the clock and refusing to follow policy that she take a full lunch hour rather than work through lunch. Hydratech had implemented a policy to cut down on overtime unless absolutely necessary but needed to abide by all Department of Labor rules and regulations and fully compensate its employees for overtime. When discovered, Plaintiff's time entry was adjusted so that she would be fully compensated, and she was counseled

3

against working off the clock again. (Doc. 28-1, ¶ 26, Doc. 29-1, ¶ 24).

Mr. Israel was aware that Plaintiff had made accounting errors on invoices during her employment with Hydratech, but on May 5, 2015, Israel discovered a large error: Plaintiff had posted an invoice in the amount of $147,600.00 to the wrong Hydratech entity, causing a discrepancy in intercompany balances and reconciliation. (Doc. 28-1, ¶ 16). Plaintiff contends that it was Clower that made the mistake, but Israel believed that Plaintiff made the mistake and Israel and Selph still maintain that it was in fact Plaintiff's mistake. (Doc. 30-1, pp. 53, 55; Doc. 28-1, ¶ 16; Doc. 29-1, ¶ 16). Mr. Israel decided to terminate Bosby as a result of the culmination of the issues with her attendance, her falsification of time record, her accounting errors, and particularly due to her $147,600.00 invoice error. (Doc. 28-1, ¶ 18). Plaintiff's termination notice, dated May 5, 2015, listed several accounting errors made by Plaintiff as well as Plaintiff's time clock issues Hydratech had documented and concluded that the incidents violated Hydratech's policies and as a result that Plaintiff was terminated effective that day. (Doc. 30-1, pp. 64-65).

Plaintiff admits that when she complained about the way she was treated she never said she felt she was being racially discriminated against. (Doc. 30-1, p. 42). Plaintiff believes the HR director knew Plaintiff was the only black employee in the accounting department and should have understood that the reason she was being treated different was because she was black. (Doc. 30-1, pp. 42-42). Plaintiff contends that certain white employees were allowed to work off the clock but admits

that she has never seen their time records or disciplinary history. (Doc. 30-1, pp. 30-35). Israel avers that he is not aware of any employee being allowed to work off the clock without being counseled the same as Plaintiff and fully compensated for their time. (Doc. 28-1, ¶ 27). Plaintiff also contends that certain white employees were permitted to violate the attendance policy without consequence but admits that she never saw their attendance records or disciplinary history. (Doc. 30-1, pp. 35-39, 48-49). According to Israel, the attendance policy, including the requirements to arrive on time, correctly report hours worked, and not to work off the clock, applied equally to all employees and infractions by any employee were not tolerated if Israel or Ms. Selph was aware of the infractions. (Doc. 28-1, ¶¶ 27, 28, 29, 30). Israel states that the employees Plaintiff suggests were treated better did not have the level and severity of attendance issues that Plaintiff had. (Doc. 28-1, ¶ 28).

Israel also states that other employees were not treated preferentially with regard to receiving mileage reimbursements, overtime, or being allowed to work through lunch. These policies were followed equally with regard to all employees. (Doc. 28-1,¶¶ 31, 32).

Plaintiff claims two of the white employees caused her issues in completing her work by not giving her the information she needed, but Plaintiff admits that she has no evidence that the reason they treated her that way was because she was black. The reason Plaintiff believes it was because of her race is because they are white, and she is black. (Doc. 30-1, pp. 15-16).

5

Plaintiff also claims she was discriminated against when Hydratech stopped participating in the Premium Reimbursement health insurance plan because she was the only participant in the plan at the time. However, due to changes in health insurance from the Affordable Care Act, Hydratech was no longer permitted to allow the Premium Reimbursement and could only allow employees the option of joining its United healthcare plan. (Doc. 28-1, ¶ 34).

Plaintiff claims she was discriminated against when her name was removed from the Hydratech invoice email address, when another white employee's name remained. However, Israel and Selph report that the decision was made to help streamline the Accounting Department because it created confusion when both Plaintiff and the other employee printed all the invoices and receivables. (Doc. 28-1, ¶ 34; Doc. 29-1, ¶ 35).

Plaintiff claims she was discriminated against when Israel decided to split the responsibility for vendors so that Plaintiff was responsible for vendors A-L and another employee was responsible for vendors M-Z. Israel later gave some of the vendors back to Plaintiff. Plaintiff felt all the changes were directed towards her and not towards the white employees. However, Plaintiff admits she has no evidence the decision was based on race and that the purpose of the decision was reportedly to give more work to the other employee and to make the department better. (Doc. 30-1, pp. 22-25).

Plaintiff also claims she was discriminated against when an error by another employee was attributed to her. However, Plaintiff concedes that Ms. Clower ultimately realized the mistake was made by another employee and that Plaintiff was not disciplined. Plaintiff has no knowledge of how Clower handled the mistake with the other employee. (Doc. 30-1, pp. 46-47).

Most of Plaintiff's alleged comparators did not have similar job duties to Plaintiff. None of Plaintiff's alleged comparators were believed to have had as many similar infractions or to have made errors as severe as Plaintiff. (Doc. 28-1, ¶ 37; Doc. 29-1, ¶ 36).

## DISCUSSION

**I. Motion to Strike**

Defendant moves to strike Plaintiff's evidentiary submission which is 393 pages long and includes copies of: counseling forms, Plaintiff's notes, Plaintiff's earning statements and tax forms, Plaintiff's EEOC correspondence and forms, Hydratech's accounting documents and invoices, and Plaintiff's interoffice emails. Plaintiff does not cite to any of the documents in her response to summary judgment and does not otherwise explain or aver what the documents mean or show. Rule 611(a) provides, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3)

7

protect witnesses from harassment or undue embarrassment. FED. R. EVID. 611(a). Pursuant to Rule 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record" and "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(1)(A) and (3). The Court is not required to "scour the record looking for factual disputes" or to "scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986)). The Court finds consideration of the exhibits without any direction from Plaintiff as to relevance or meaning would waste the Court's time and be an ineffective means for determining the truth. Moreover, after a quick review of the documents submitted the Court concludes that the documents do not raise a genuine issue of material fact. Plaintiff appears to be trying to establish that she did not actually make the accounting errors that Hydratech attributed to her. As will be explained below, whether or not Plaintiff was in fact at fault has little relevance if the evidence demonstrates that Defendant believed she was at fault and terminated her for that reason. The documents also show Plaintiff's wages from Hydratech which could be relevant to her claim for backpay. However, Plaintiff's earnings and other damage evidence are irrelevant if Plaintiff cannot show she was discriminated against. In light of all of the above, the Court, in its discretion, finds it appropriate to strike the exhibits. Accordingly, Defendant's

motion to strike will be granted.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson,* 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d

1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that

party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### B. Plaintiff's Claims

The Court notes that Plaintiff is proceeding *pro se* and thus will attempt to give her Complaint and other filings a very lenient reading. However, "[i]n opposing a motion for summary judgment, a 'party may not rely on h[er] pleadings to avoid judgment against h[er].'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995) (citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted).

> Courts do and should show a leniency to pro se litigants
> not enjoyed by those with the benefit of a legal education.
> See, e.g., Powell v. Lennon, 914 F.2d 1459, 1463 (11th

11

> Cir.1990). Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, *see Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991), or to rewrite an otherwise deficient pleading in order to sustain an action, *see Pontier v. City of Clearwater*, 881 F.Supp. 1565, 1568 (M.D.Fla.1995).

*GJR Investments Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Plaintiff "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," the same as any other litigant. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

In response to Defendant's motion for summary judgment Plaintiff filed a one-page response that simply states that she opposes Defendant's motion. (Doc. 35). Plaintiff also filed an evidentiary submission which the Court found above does not appear to support her claims and should be stricken. Thus, the only evidence or argument before the Court is the evidence submitted by Defendant. As stated above, the onus is on Plaintiff to formulate arguments, and grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Thus, Plaintiff's claims could be dismissed simply because she has failed to offer any argument or evidence in opposition to Defendant's motion. However, because the Plaintiff is proceeding *pro se*, and because Defendant included in its submission Plaintiff's deposition testimony in which she describes her claims and the basis for them, the Court, out of an abundance of caution, will analyze the merits of Plaintiff's claims.

12

Plaintiff claims her treatment and termination was motivated by racial discrimination. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove discrimination or retaliation by relying on either direct, circumstantial, or statistical evidence. *See Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). As the U.S. District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlate to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

*Id.* (quoting *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). No direct evidence of discrimination or retaliation has been submitted to the Court. None of the evidence offered proves without inference or presumption that the people who made the employment decisions did so based on Plaintiff's race

13

or because she had engaged in a protected activity. Plaintiff has also not attempted to show discrimination through statistical evidence.

A plaintiff may attempt to show discrimination or retaliation based on circumstantial evidence through the application of the *McDonnell Douglas* burden-shifting analysis established by the Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first raise an inference of discrimination by establishing a *prima facie* case. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir.1997)).

In order to make out a *prima facie* case of discrimination, a plaintiff must show (1) [s]he is a member of a protected class; (2) [s]he suffered an adverse job action; (3) h[er] employer treated similarly situated employees outside h[er] classification more favorably; and (4) [s]he was qualified to do the job. *Barnes v. Crowne Investments, Inc.*, 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005) (citations omitted). The Court finds that the first prong is satisfied, as it is undisputed that Plaintiff is a member of a protected class. There is also no dispute that Plaintiff suffered an adverse job action when she was terminated. However, Defendants dispute that Plaintiff suffered any other adverse job actions and dispute that similarly situated employees outside her classification were treated more favorably.

"An employment action is considered 'adverse' only if it results in some

tangible, negative effect on the plaintiff's employment.... A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Martin v. Eli Lilly & Co.*, 702 Fed.Appx. 952, 956 (11th Cir. 2017) (citations omitted). "We apply an objective test and require a plaintiff to demonstrate that a reasonable person in her position would view the employment action in question as adverse." Here, the Court finds that, other than Plaintiff's termination, Plaintiff has not demonstrated that a reasonable person in her position would find any of the other actions and decisions by Hydratech constituted an adverse action.

The Court also finds Plaintiff has not presented evidence that Hydratech treated similarly situated employees outside her classification more favorably. To be appropriate comparators, the employees must be "similarly situated in all aspects." *Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted). The Court finds that Plaintiff has not presented evidence that similarly situated employees outside her classification were treated more favorably. Thus, the Court finds Plaintiff has not established a *prima facie* case of discrimination.

To establish a *prima facie* case of retaliation based on circumstantial

evidence, the plaintiff must show:

> (1) that [s]he engaged in a statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the adverse action and h[er] protected expression.

*Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001) (citations omitted). In the instant case, Plaintiff has not shown that she engaged in a protected activity prior to her termination. Plaintiff claims her protected activities were her complaints of racial discrimination. However, Plaintiff admits that she never complained she was being racially discriminated against. Plaintiff only complained that she was not being treated fairly and she assumed they would understand that the reason she believed she was not being treated fairly was because of her race. Common sense tells us that a decisionmaker's lack of awareness of an employee's engagement in a protected activity renders the decisionmaker unable to retaliate on the basis of said activity. *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). An employee must "at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred." *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (citation and internal quotations omitted).

Even if Plaintiff could establish *a prima facie* case of discrimination or retaliation, the Court finds that her claims would still fail. If Plaintiff could establish a *prima facie* case of discrimination or retaliation, the burden would then

shift to the Defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." *Hamilton*, 122 F.Supp.2d at 1280 (quoting *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)). If the Defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. *Id.* "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." *Id.* (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.' " *Hamilton*, 122 F. Supp.2d at 1281 (quoting *Combs,* 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. *See Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir. 1982) (citing *Haring v. CPC International, Inc.*, 664 F.2d 1234, 1239-40 (5th Cir. 1981)). However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman*, 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). It is not appropriate for either the plaintiff or this Court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030.

In this case, defendant has clearly met its burden of proffering a legitimate, non-discriminatory reason for terminating Plaintiff and Plaintiff has not shown that that reason was pretextual. Plaintiff claims she did not make the $147,600.00 accounting error, but even if Plaintiff could show that Defendant wrongly accused her of the error, that still would not show that Defendant's reason for terminating her was pretextual. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communication*, 738 F.2d 1181, 1187 (11th Cir. 1984). An employer's reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and*

18

that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). Courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Plaintiff presented no evidence that the decision to terminate her was motivated by unlawful discriminatory animus. Accordingly, the Court finds that even if Plaintiff could establish *prima facie* cases of discrimination or retaliation, she has presented no evidence to indicate that her employer's reasons were pretextual.

## CONCLUSION

For the reasons stated above, Defendant's motion to strike Plaintiff's evidentiary submission (Doc. 38), and Defendant's motion for summary judgment (Doc. 25), are **GRANTED**.

**DONE** and **ORDERED** this 14th day of June, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE